## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

TAYLOR TASHIMA,

Plaintiff,

v.

SHOWROOM GLOBAL, INC.,

Defendant.

Case No. 23-cv-16996

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Taylor Tashima ("Tashima") brings this action against Defendant Showroom Global, Inc. ("Showroom") alleging violations of the federal Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); violations of the Illinois Equal Pay Act ("IEPA"), 820 ILCS 112/1; breach of contract; and violations of the Illinois Human Rights Act ("IHRA"). Showroom has moved to dismiss all counts. For the reasons stated herein, Defendant's Motion to Dismiss [19] is granted in part.

### I.    Background

The following factual allegations taken from the operative complaint [14] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas,* 20 F.4th 1178, 1181 (7th Cir. 2021).

Plaintiff Taylor Tashima ("Tashima") and Sam Rattner ("Rattner") first began working together at Vigtory Sportsbook, a sports betting service which was acquired by fuboTV. [14] at ¶¶ 5-6. After fuboTV's purchase of Vigtory Sportsbook, Rattner

invited Tashima to join him in a new, yet to be determined, business venture. *Id.* at ¶ 7. From March 2022 to October 2022, Tashima worked with Rattner, without pay, to pursue several potential business ventures including an online firearm marketplace, direct-to-consumer cigars, a riverboat casino and entertainment venue, acquisition of hundreds of vending machines, and a social club in Chicago. *Id.* at ¶ 8. In October 2022, Tashima and Rattner jointly decided to focus on developing a technology company, Showroom Global, Inc. ("Showroom"), that would give merchants the tools to build an online 3-D store. *Id.* at ¶ 9. Michael Bilstein ("Bilstein") then joined the company as its third co-founder and Chief Technology Officer. *Id.* at ¶ 10.

On November 2, 2022, Tashima signed an employment agreement with Showroom, giving her the title of Vice-President of Business Operations/Marketing and an annual salary of $110,000. *Id.* at ¶ 11. Tashima also signed a Restricted Stock Purchase Agreement, which permitted Tashima to purchase 350,000 shares of common stock in Showroom. *Id.* at ¶ 12. The first 25% of Tashima's shares in Showroom, 87,500 shares, were scheduled to vest on November 1, 2023. *Id.* at ¶ 13.

From November 2022 to October 2023, Tashima worked to advance Showroom by building and operationalizing the company's full marketing blueprint, playing a pivotal role in fundraising efforts, crafting and refining pitch decks to engage potential investors, working with designers to develop Showroom's user interface, assisting front end developers, and performing platform audits. *Id.* at ¶¶ 15-16. Tashima performed many of the same tasks again after Showroom significantly

altered its business model in May 2023, and became an AI-powered fashion search engine. *Id.* at ¶ 17. From August 2023 to October 2023, Tashima contributed to the company by crafting fundraising presentations, staging demos, establishing the framework for a creator program, overseeing the integration of analytics platforms, supervising the development of a data dictionary, launching product testing, designing email templates, and developing proficiency in digital platform tools. *Id.* at ¶ 19.

On October 20, 2023, Rattner informed Tashima that because Showroom's product launch was delayed and he could not think of anything productive for Tashima to do during the delay, Showroom's Board of Directors had decided to "limit cash burn" by placing Tashima on a leave of absence with half-pay if Tashima also agreed to indefinitely delay the vesting of the first 25% of Tashima's shares. *Id.* at ¶ 21. Rattner told Tashima to take the weekend to think about the proposal. *Id.* at ¶ 23. Tashima told Rattner that she would think about the proposal, consider all her options, and get back to him with any question or other ideas she had for limiting the company's cash burn. *Id.* Tashima met with Rattner again on October 23, 2023, and tried to suggest alternatives for limiting the company's cash burn. *Id.* at ¶ 24. Rattner told Tashima that her only options were to either go on a leave of absence and postpone the vesting of her shares or to leave the company. *Id.*

On October 24, 2023, Tashima engaged a law firm to assess her available options. *Id.* at ¶ 25. The firm requested a week to be brought up to speed. *Id.* On October 25, 2023, five days before Tashima's shares were scheduled to vest, Rattner

terminated Tashima's employment. *Id.* at ¶¶ 20, 25. Showroom subsequently repurchased all Tashima's shares for $3.50 prior to the vesting deadline of November 1, 2023. *Id.* at ¶ 25. Tashima's termination notice states the reason for her termination was that the company's "business needs simply do not require your services, which are currently underutilized and have been for some time." *Id.* at ¶ 26.

Tashima's salary was significantly less than the salaries of Rattner and Bilstein. *Id.* at ¶ 11. Rattner and Bilstein also received significantly more shares in Showroom than Tashima. *Id.* at ¶ 12. Rattner and Bilstein were also made members of Showroom's Board of Directors, along with an investor from SeventySix Capital. *Id.* at ¶ 14. Tashima was not a member of the Board of Directors. *Id.* Rattner told Tashima that she did not need to be on the Board because her interests were represented by Rattner and Bilstein. *Id.* Tashima never received any negative performance reviews or comments on her work from Rattner during the time they worked together. *Id.* at ¶ 27. Tashima alleges that Showroom terminated her employment "solely to avoid her shares from vesting." *Id.* at ¶ 43.

Tashima filed a charge of discrimination with the Illinois Department of Human rights and received a right-to-sue notice around February 8, 2024. *Id.* at ¶ 4. Tashima brings this action against Showroom. She alleges on one federal claim, violation of the federal EPA (Count I); her remaining claims are pendant state law claims: violations of the IEPA; breach of contract; and violations of the IHRA (Counts IV and V).

## II.    Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC,* 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax,* 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.,* 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC,* 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago,* 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009)).

## III.    Analysis

Showroom moves to dismiss Tashima's EPA and IEPA claims for failure to state a claim, arguing that Tashima has failed to sufficiently plead that she performed equal work as her male colleagues. [20] at 9-10. On this narrow question, the Court agrees with Showroom.

The EPA provides that employers may not discriminate "between employees on the basis of sex by paying wages to employees … at a rate less than the rate at which he pays wages to employees of the opposite sex … for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C.A. § 206(d)(1). The IEPA is nearly identical, *see* 820 Ill. Comp. Stat. Ann. 112/10(a), and claims brought under the IEPA and EPA are evaluated under the same standards. *See Hubers v. Gannett Co., Inc.,* No. 16 C 10041, 2019 WL 1112259, at *4 n.8 (N.D. Ill. Mar. 11, 2019). To adequately plead a violation of the EPA or IEPA, a female plaintiff need only plausibly allege "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508,* 846 F.3d 216, 230 (7th Cir. 2017).

Tashima has failed to plausibly allege that she was paid less than male employees doing similar work under similar conditions. Tashima alleges that she was paid "significantly less" than Rattner and Bilstein, and that Rattner and Bilstein were provided "significantly more shares" of the company than she was. [14] at ¶¶

11-12. However, Tashima's allegations about the work the three employees performed are simply that Tashima performed work that was "substantially equal to the work performed by her male counterparts in terms of the level of skills, effort and responsibilities that was required for the position" and that she worked "under similar working conditions" as her male counterparts. [14] at ¶¶ 29-30, 35-36. It is not clear from the Complaint what Rattner's and Bilstein's job responsibilities entailed, what conditions they worked under, and how their job responsibilities and work conditions were similar or different from Tashima's job responsibilities and working conditions. "Without some description of the comparable male's position and duties, as compared to Plaintiff's duties, no inference of plausibility arises to support her conclusion that the work was equal." *Wade v. Morton Bldgs., Inc.,* No. 09-1225, 2010 WL 378508, at *6 (C.D. Ill. Jan. 27, 2010). Tashima's allegations are simply a "formulaic recitation of the elements" of an EPA or IEPA cause of action and are inadequate to plausibly state a claim. *Sevugan*, 931 F.3d at 614.

Showroom's motion to dismiss Tashima's EPA and IEPA claims is therefore granted. The Court dismisses Counts I and II without prejudice.

## IV. Conclusion

For the stated reasons, Defendant's Motion to Dismiss [19] is granted in part. Counts I and II are dismissed without prejudice.

E N T E R:

Dated: January 6, 2025

_____

MARY M. ROWLAND
United States District Judge